UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

RONITA ELLIOTT,
*Plaintiff,*

v.                                            No. 3:23-cv-00879 (VAB)

AVANGRID MANAGEMENT COMPANY
*Defendant.*

**RULING AND ORDER ON MOTION FOR SUMMARY JUDGMENT**

Ronita Elliott ("Plaintiff") has filed a Complaint against Avangrid Management company ("Avangrid" or "Defendant") alleging unlawful age discrimination in violation of the Age Discrimination in Employment Act ("ADEA") ("Count One"); unlawful age discrimination in violation of the Connecticut Fair Employment Practices Act ("CFEPA") ("Count Two"); unlawful retaliation in violation of the ADEA, ("Count Three"); and unlawful retaliation in violation of the CFEPA ("Count Four").

Avangrid has moved for summary judgment on all counts.

For the following reasons, Avangrid's motion for summary judgment is **GRANTED in part** and **DENIED in part**. The ADEA claims are dismissed. The Court declines to exercise jurisdiction over the CFEPA claims, and those claims are dismissed without prejudice to refiling in state court.

I.    FACTUAL AND PROCEDURAL BACKGROUND

   A.  Factual Background[1]

Avangrid Management Company owns electric and gas distribution and transmission

---

[1] Unless noted otherwise, the following factual statements are taken from portions of the Avangrid's Statement of Material Facts that Ms. Elliott has admitted as true. *See* Plaintiff's Statement of Facts in Opposition, 1–80, ECF No. 52 (Feb. 10, 2015) ("Pl. SOF in Opp.").

companies that serve New York, Maine, Connecticut, and Massachusetts. Defendant's Statement of Facts ¶ 2, ECF No. 40-2 (Nov. 15, 2024) ("Def. SOF").

Born on December 10, 1963, Plaintiff's Statement of Additional Facts, 81 ¶ 1., ECF No. 52 (Feb. 10, 2025) ("Pl. SOF"), Ms. Elliott has an associate's degree in general studies from Gateway Community Technical College, a bachelor's degree in human services from Springfield College, and a Master of Science degree in organizational management and human resource development from Manhattanville College. Pl. SOF. ¶¶ 2–4.

On January 22, 2008, UIL Holding Corporation, an affiliate of Avangrid, hired Ms. Elliott. *Id.* ¶ 5. From approximately 2008 to 2017, Ms. Elliott worked for UIL Holding Corporation as an HR Recruiter.[2] *Id.* In October of 2017, Ms. Elliott applied and was hired as an Analyst – HR Systems position. Def. SOF ¶ 8.

On June 27, 2019, Ms. Elliott filed an internal complaint alleging age discrimination and retaliation. *Id.* ¶ 171. The allegations were unsubstantiated. *Id.* ¶ 173.

On December 22, 2019, Ms. Elliott became an Avangrid employee, continuing in her role of Analyst – HR Systems. *Id.* ¶ 12.

On April 9, 2021, Ms. Elliott filed an internal complaint alleging retaliation due to her previous discrimination complaint. *Id.* ¶ 174. After the investigation, the investigator prepared "a few slides," and stated: "I found that Roni [Ms. Elliott] should have been granted an interview for the Project Manager – Security position, and that Roni was underqualified for the Manager – Labor Relations CT role." Pl. SOF ¶ 56. The case was then closed. Def. SOF ¶ 178.

---

[2] Avangrid contends that Ms. Elliott spent five months in 2008 working in a customer service role. Def. SOF ¶ 5. Ms. Elliott states that she worked in the recruiter position from the date of hire until 2017. Pl. SOF in Opp.¶ 5. Regardless of the exact date in 2008 in which she began the recruiter role, the record demonstrates she maintained that position from sometime in 2008 to 2017.

Between 2021 and 2022, Ms. Elliott applied for eight jobs prior to being hired for the Analyst – Joint Use Facilities position. *Id.* ¶ 20.  On November 4, 2021, Ms. Elliott applied for the Program Manager – Customer Service Compliance position. *Id.* ¶ 167. On January 2, 2022, someone else was hired for the Program Manager – Customer Service Compliance position. *Id.* ¶ 167.  On November 15, 2021, Ms. Elliott applied for a Lead Analyst – Customer Care position. *Id.* ¶ 169. No applicant was hired into this role. *Id*. ¶ 168. On November 22, 2021, Ms. Elliott applied for the Lead Analyst – Hardship Program Administrator role. *Id.* ¶ 147. Ms. Elliott was not interviewed for this role. *Id.* ¶ 159. J.S., who was 43 years old at the time of hire, was selected for the Lead Analyst – Hardship Program Administrator role. *Id.* ¶ 160. On December 16, 2021, Ms. Elliott applied for the role of Manager- Operator Qualification. *Id.* ¶ 77. Ms. Elliott was not interviewed for the Manager – Operator Qualification position. *Id.* ¶ 91.  Lisa Portelli, who was 35 at the time, was hired for the Manager – Operator Qualification position. *Id.* ¶ 92. On September 8, 2022, Ms. Elliott applied for an Analyst – DG position. *Id.* ¶ 98. Ms. Elliott was not interviewed for the Analyst – DG role. *Id.* ¶ 111. D.M., who was 58 at the time of hire, was selected for the Analyst – DG position. *Id.* ¶ 112.

On March 9, 2022 and March 24, 2022, Ms. Elliott applied for two separate Senior Operator Qualification Analyst roles. *Id.* ¶ 53. Ms. Elliott was not interviewed for either of the Senior Operator Qualification Analyst roles. *Id.* ¶ 64. Mr. Portelli, the hiring manager for these positions, hired A.R., who was 38 years old at the time of hire, and L.B., who was 36 years old at the time of hire, into the Senior Operator Qualification Analysis positions. *Id.* ¶ 68. An e-mail from Ms. Portelli states that she would speak with another employee "about pulling one of the jobs down." Pl. SOF in Opp. ¶ 17. In the same e-mail, Ms. Portelli indicated that "[A.R] is doing the job now and [she]'d like it if he was considered." *Id.*

On May 6, 2022, Ms. Elliott filed a third internal complaint alleging disparate treatment in the recruitment process, disparate treatment in the internal promotion process, and disparate treatment with her 2020 compensation bonus. Def. SOF ¶ 179. Ms. Elliott requested a "neutral third-party" investigate her claims. *Id.* ¶ 181.[3] The complaint was closed on June 9, 2022. *Id.* ¶ 188.

On September 26, 2022 and October 21, 2022, Ms. Elliott applied for two separate Operator Qualification Analyst roles. *Id.* ¶ 22. Ms. Elliott was around 59 years old when she applied for these positions. Pl. SOF in Opp. ¶ 47. The hiring manager for the Operator Qualification Analyst position, Ms. Portelli, did not hire anyone into the role when Ms. Elliott first applied in September of 2022. Def SOF. ¶ 46. For the second Operator Qualification Analyst Position, Ms. Portelli hired M.M. who was around 53 years old when she was hired into the position. *Id.* ¶ 47.

On November 4, 2022, Ms. Elliott applied for the role of Lead Analyst – Financial Reporting. *Id.* ¶ 119. Ms. Elliott was interviewed for the Lead Analyst – Financial Reporting role. *Id.* ¶ 137. E.F., who was 38 years of age at the time of hire, was selected for the Lead Analyst – Financial Reporting role. *Id.* ¶ 141. Robin Lyons was the hiring manager for this position. Pl. SOF. ¶ 40. Ms. Lyons sent an e-mail referring to the successful candidate, E.F., stating, "I will tell him in the email this morning that if he needs to apply this morning or else I will need to move on with the process." *Id.* ¶ 41. After interviewing E.F. and Ms. Elliott, and deciding to offer the position to E.F., Ms. Lyons sent an email stating "Also, let's not tell Roni

---

[3] The parties disagree as to whether this claim was sufficiently investigated, by a neutral party or otherwise. *See* Pl. SOF in Opp. ¶ 188 ("The report is duplicitous when it infers that the plaintiff's complaints were not substantiated based on an investigation of her complaints by the defendant, when, in fact, an investigation never took place.").

that she does not have the position, as if [E.F.] declines, then I would extend the offer to Roni."
*Id.* ¶ 44.

On November 10, 2022, Ms. Elliott filed a charge of discrimination with the Commission
of Human Rights and Opportunities ("CHRO") alleging age discrimination in violation of the
CFEPA and ADEA. *Id.* ¶ 190.

On February 9, 2023, Ms. Elliott applied for the role of Analyst – Joint Use Facilities at
the United Illuminating Company, another subsidiary of Avangrid. *Id.* ¶ 14. Ms. Elliott was
selected by Ms. Lyons for the role of Analyst – Joint Use Facilities and began working in this
role on March 26, 2023. *Id.* ¶¶ 15, 17.

Ms. Elliott did not apply to the roles of Senior Employee – Labor Relations Analyst,
Manager – Talent Acquisition, and Manager – Employee Labor and Relations. *Id.* ¶ 169. Ms.
Elliott states that she did not apply for these positions because she was told by other employees
of Avangrid that she did not possess the qualifications for the position. Pl. SOF ¶¶ 21–30.

### B. Procedural History

On July 3, 2023, Ms. Elliott filed her Complaint. Compl., ECF No. 1 (July 3, 2023).

On August 10, 2023, Avangrid filed an Answer to the Complaint. Answer, ECF No. 13
(Aug. 10, 2023).

On November 15, 2024, Avangrid filed a motion for summary judgment accompanied by
a memorandum in support, statement of material facts, and supporting exhibits. Mot. for
Summary Judgment, ECF No. 40 (Nov. 15, 2024); Memo. in Supp., ECF No. 40-1 (Nov. 15,
2024) ("Memo. in Supp."); Def. SOF; Exhibits in Support, ECF No. 40-3 (Nov 15, 2024) ("Def.
Exhibits").

On February 10, 2025, Ms. Elliott filed a memorandum in opposition to the motion for summary judgment and a statement of material facts. Memo. in Opp. re Mot. for Summary Judgment, ECF No. 53 (Feb. 10, 2025) ("Memo. in Opp."); Pl. SOF.

On March 26, 2025, Avangrid filed a reply to Ms. Elliott's memorandum in opposition. Reply to Response to Mot. for Summary Judgment, ECF No. 58 (Mar. 26, 2025) ("Reply").

On March 28, 2025, Ms. Elliott filed a motion to preclude Avangrid's response to her statement of additional material facts. Mot to Preclude Def.'s Response, ECF No. 59 (March 28, 2025) ("Mot. to Preclude").

On April 16, 2025, Avangrid filed a memorandum in opposition to Ms. Elliott's motion to preclude. Memo. in Opp. re Mot. to Preclude, ECF No. 60 (Apr. 16, 2025) ("Response").

## II.    STANDARD OF REVIEW

A court will grant a motion for summary judgment if the record shows no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The non-moving party may defeat the motion by producing sufficient evidence to establish that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247–48 (emphasis in the original).

"[T]he substantive law will identify which facts are material." *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*; *see Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir.

6

1996) ("[M]ateriality runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive law." (citing *Anderson*, 477 U.S. at 248)).

"The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250. When a motion for summary judgment is supported by documentary evidence and sworn affidavits and "demonstrates the absence of a genuine issue of material fact," the non-moving party must do more than vaguely assert the existence of some unspecified disputed material facts or "rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (citation omitted).

The party opposing the motion for summary judgment "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Id.* "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 250 (citing *Dombrowski v. Eastland*, 387 U.S. 82, 87 (1967); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968)).

A court must view any inferences drawn from the facts in the light most favorable to the party opposing the summary judgment motion. *See Dufort v. City of N.Y.*, 874 F.3d 338, 343 (2d Cir. 2017) ("On a motion for summary judgment, the court must 'resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought.'"). A court will not draw an inference of a genuine dispute of material fact from conclusory allegations or denials, *see Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011),

and will grant summary judgment only "if, under the governing law, there can be but one

reasonable conclusion as to the verdict," *Anderson*, 477 U.S. at 250.

## III.    DISCUSSION

Ms. Elliott alleges that Avangrid unlawfully discriminated against her due to her age in

violation of ADEA and CFEPA by denying her promotions to positions she was qualified for and

that Avangrid unlawfully retaliated against her in violation of the ADEA and CFEPA by denying

her promotion after she filed internal complaints about the alleged age discrimination.

Ms. Elliott's claims are based on positions of:

> A.  Program Manager — Customer Service Compliance;
> B.  Lead Analyst- Customer Care;
> C.  Lead Analyst — Hardship Program Admin[istrator];
> D.  Manager- Operator Qualification
> E.  Senior Operator Qualification Analyst;
> F.  Senior Operator Qualification Analyst;
> G.  Senior Employee - Labor Relations Analyst;
> H.  Manager - Talent Acquisition;
> I.  Manager - Employee and Labor Relations;
> J.  Analyst - DG position on or about September 8, 2022;
> K.  Operator Qualification Analyst position on or about September 16, 2022;
> L.  Operator Qualification Analyst position on or about October 21, 2022; and
> M.  Lead Analyst - Financial Reporting position on or about November 4, 2022[.]

Compl. ¶ 265.

Avangrid moves for summary judgment on all counts, arguing that Ms. Elliott's claims

are "without merit and unsupported by the record." Memo. in Supp. at 2. Specifically, Avangrid

argues that the statute of limitations has expired for two of the roles forming the basis of Ms.

Elliott's Complaint; that Ms. Elliott did not apply to three roles forming the basis of her

Complaint, and thus they cannot be the basis of her claims; and that for the remaining eight roles,

the evidence does not demonstrate that Ms. Elliott was not hired due to retaliation or age

discrimination. *Id.* at 4.

Ms. Elliott has also moved to preclude the Court from considering Avangrid's response to her Rule 56(a)(2) statement and additional supporting evidence. Mot. to Preclude at 1.

The Court will first address the motion to preclude and then turn to the motion for summary judgment.

### A.  The Motion to Preclude

"A district court enjoys broad discretion (1) to consider arguments made for the first time in a reply brief [and] (2) to rely on evidence submitted with the reply papers . . . ." *Compania Del Bajo Caroni (Caromin), C.A. v. Bolivarian Republic of Venezuela*, 341 F. App'x 722, 724 (2d Cir. 2009) (citations omitted) (summary order); *see also Bayway Refining Co. v. Oxygenated Marketing and Trading A.G.*, 215 F.3d 219, 226–27 (2d Cir 2000) ("[R]eply papers may properly address new material issues raised in the opposition papers so as to avoid giving unfair advantage to the moving party." (quoting *Litton Indus. v. Lehman Bros. Kuhn Loeb Inc.*, 767 F. Supp. 1220, 1235 (S.D.N.Y.1991), *rev'd on other grounds*, 967 F.2d 742 (2d Cir.1992)).

When determining whether to consider new evidence offered on reply in the summary judgment context, district courts have considered whether the party is replying to a material issue raised first in response and whether the opposing party would be surprised or prejudiced by the introduction of new evidence. *See, e.g.*, *Travelers Indem. Co. v. Excalibur Reinsurance Corp.*, No. 3:11-cv-1209 (CSH), 2013 WL 4012795, at *3 (D. Conn. Aug. 5, 2013) ("In deciding whether to consider the Robles Affidavit, the Court analyzed whether the affidavit addressed new material issues and/or whether it was filed in an attempt to cure a deficiency within Travelers's original motion papers. . . . Most importantly, I find that no prejudice was suffered by Excalibur in the Court's consideration of the Robles Affidavit . . . ."); *Goins v. JBC  Assoc., P.C.*,

352 F. Supp. 2d 262, 270 n.3 (D. Conn. 2005) ("Although submitted in reply, the Court finds it appropriate to consider this evidence, as defendants have not disputed that they were unlicensed, cannot claim surprise at the Department of Banking letter, which was directed to defendants in response to their application, and have not sought leave to respond to the evidence.").

Ms. Elliott argues that Avangrid has filed an "unsanctioned response" because its reply includes "additional evidence not produced in its initial filing." Mot. to Preclude at 2. Ms. Elliott additionally argues that Avangrid's response admitting or denying the additional facts stated in her Statement of Facts is not authorized by the Local Rules and should not be considered. *Id.* at 4.

In response, Avangrid argues that its submission of additional evidence should be permitted because it has not "raised any new arguments and has not asserted any of its own undisputed facts." Response at 2. Instead, Avangrid states, "the additional evidence . . . has been introduced for the discrete and limited purpose of responding directly to new facts and arguments raised in [Ms. Elliott's] opposition." *Id.* (cleaned up) (internal quotation marks omitted).

The Court agrees.

Avangrid's reply includes additional evidence regarding hiring managers' access, or lack thereof, to personnel files that would have provided them with the ages of job candidates. *See* Reply at 6 ("Plaintiff has failed to do so in this case and, to the contrary, the evidence shows that none of the hiring managers were aware of any candidate's age let alone that there were any age discrepancies among candidates." (citing prior and new affidavits)). While Avangrid asserted in its initial motion that the various hiring managers were unaware of Ms. Elliott's age, *see, e.g.*, Memo. in Supp. at 10 ("Ms. Portelli had never personally met Plaintiff and did not know Plaintiff's age at the time she reviewed the candidates for these roles, nor did she know the ages

of any of the candidates[.]"), Ms. Elliott raised the specific issue of access to personnel files in her objection to the motion for summary judgment, *see* Memo. in Opp. at 26 ("It would be derelict on the part of the hiring managers in assessing the qualifications of the candidates not to review the personnel files of the applicants . . . . As such, it is not credible that they would not have access to the candidates age information.").

Because the new affidavits address a "new material issue[] raised in the opposition papers," *Bayway Refining Co.*, 215 F.3d at 226, the Court finds it appropriate to consider them. Additionally, the consideration of this evidence would not prejudice Ms. Elliott, as she has had the opportunity to introduce evidence related to the access of personnel files when she first raised the point in her brief, has not identified any specific prejudice in this motion to preclude, and has not moved to file a sur-reply. *See, e.g.*, *Goins*, 352 F. Supp. 2d at 270 n.3 (considering new evidence in reply when opposing party "had not sought leave to respond" and could not "claim surprise").

Accordingly, the motion to preclude Avangrid's reply will be denied.

### B.  The Statute of Limitations Period

"[B]efore filing a civil action, ADEA plaintiffs . . . must file with the EEOC within 300 days . . . ." *Brodsky v. City Univ. Of New York*, 56 F.3d 8, 10 (2d Cir. 1995). Courts apply this 300-day requirement to claims under the CFEPA as well. *See, e.g.*, *DeSouza v. EGL Eagle Global Logistics LP*, 596 F. Supp. 2d 456, 462 (D. Conn. 2009) (applying 300-day limitation to Title VII and CFEPA claims); *Miner v. Town of Cheshire*, 126 F. Supp. 2d 184, 188 (D. Conn. 2000) (same). "[A] 'failure to promote' claim [is] a paradigmatic discrete act for which an action accrues for statute of limitations purposes on the date on which a decision not to promote

occurs." *Johnson v. Connecticut*, 426 F. Supp. 2d 87, 92 (D. Conn. 2006), *affirmed sub nom.*, *Johnson v. State of Conn. Dept.*, 225 F. App'x 42 (2d Cir 2007) (summary order).

Avangrid argues that because Ms. Elliott filed her complaint with the CHRO and Equal Employment Opportunity Commission ("EEOC") on November 10, 2022, "any alleged act of discrimination that occurred prior to January 14, 2022" is time-barred. Memo. in Supp. at 24.

The Court agrees.

Ms. Elliott admits to filing her charge with the CHRO and EEOC on November 10, 2022, *see* Pl.'s Response to Def. SOF ¶ 19; Compl ¶ 8, that the Program Manager – Customer Service Compliance role was filled on January 1, 2022, Pl.'s SOF in Opp. ¶ 167, and that she applied to the Lead Analyst – Customer Care role on November 15, 2021, which was never filled, Pl.'s SOF in Opp. ¶ 168. Thus, the alleged discriminatory actions related to the Project Manager – Customer Service Compliance and Lead Analyst – Customer Care positions occurred more than 300 days before the filing of the CHRO and EEOC complaints and are time-barred.

Moreover, as Ms. Elliott did not respond to Avangrid's statute of limitations arguments, the Court considers her to have effectively conceded them. *See, e.g.*, *Scott v. JPMorgan Chase & Co.*, No. 13 Civ. 646 (KPF), 2014 WL 338753, at * (S.D.N.Y. Jan. 30, 2014) ("For strategic or other reasons unknown to the Court, Plaintiff has failed to respond to these arguments . . . . In doing so, Plaintiff effectively concedes the validity of the Arbitration Agreement and its conclusive effect of requiring Plaintiff to arbitrate this dispute with all Defendants."); *Nance v. New York Public Interset Research Group Fund, Inc.*, No. 1:23-cv-3030 (MKV), 2025 WL 965883, at *7 (S.D.N.Y. Mar. 31, 2025) ("It is well-established that a plaintiff effectively concedes a defendant's arguments by his failure to respond to them." (internal citations and quotation marks omitted)) (collecting cases).

Accordingly, summary judgment will be granted to the extent Ms. Elliott's claims rely on her not being selected for the Program Manager – Customer Service Compliance and Lead Analyst – Customer Care roles.

### C.  The AEDA Claims

Under the ADEA, it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). The ADEA's prohibitions protect employees who are at least forty years of age. *Id.* § 631(a).

ADEA discrimination claims are analyzed using the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), as modified by *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009). *See Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 105–06 (2d Cir.2010) ("Prior to *Gross*, claims under the ADEA were analyzed under the burden-shifting framework set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, pursuant to which the plaintiff had the burden of demonstrating that his or her age was a motivating factor in the adverse employment action. *Gross* makes clear that 'a plaintiff bringing a disparate-treatment claim pursuant to the ADEA must prove, by a preponderance of the evidence, that age was the "but-for" cause of the challenged adverse employment action' and not just a contributing or motivating factor." (citations omitted)). Following this framework, "the plaintiff bears the initial burden of establishing a prima facie case of discrimination. If the plaintiff does so, the burden shifts to the defendant to articulate 'some legitimate, nondiscriminatory reason' for its action." *Id.* at 106 (quoting *McDonnel Douglas*, 411 U.S. at 802). Once such a nondiscriminatory reason

has been provided, the plaintiff can only "prevail if she can show that the employer's determination was in fact the result of discrimination." *Id.*

The plaintiff must prove that "age was the 'but-for' cause of the challenged adverse employment action." *Id.* (quoting *Gross*, 557 U.S. at 180). A plaintiff can satisfy his or her burden "by presenting facts, which taken in his favor, suffice to show that a triable issue exists as to whether his age was a 'but for' cause of his termination." *Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 168 (2d Cir.2014) (internal quotation marks and citations omitted). "The condition that a plaintiff's age must be the 'but for' cause of the adverse employment action is not equivalent to a requirement that age was the employers only consideration, but rather that the adverse employment action[ ] would not have occurred without it." *Id.* at 169 (quoting *Fagan v. U.S. Carpet Installation, Inc.*, 770 F.Supp.2d 490, 496 (E.D.N.Y.2011)) (emphasis omitted).

Avangrid argues that Ms. Elliott did not apply to three positions that form the basis of her action and thus that these positions cannot form the basis of her claims; and that for the positions she did apply to, Ms. Elliott has failed to make out a *prima facie* case of discrimination or retaliation, and in any case, there are legitimate, nondiscriminatory reasons for her not being hired or promoted.

Ms. Elliott argues that Avangrid relies on "flawed legal theories"; that she has established a *prima facie* case of age discrimination or retaliation for positions to which she applied and that there is evidence that Avangrid's proffered legitimate motives are pretextual.

The Court will address each argument in turn.

14

### a.  *Age Discrimination Under the ADEA*

#### i.  *The Positions to Which Ms. Elliott Did Not Apply*

"In order to establish a *prima facie* case for failure to promote, the plaintiff must allege: (1) that she is a member of a protected class; (2) that her job performance was satisfactory; (3) that she applied for and was denied a promotion; and (4) that the position remained open and the employer continued to seek applicants." *Sedotto v. Borg-Warner Protective Services Corp.*, 94 F. Supp. 2d 251, 261–62 (D. Conn. 2000) (citing *Cruz v. Coach Stores*, 202 F.3d 560, 565 (2d Cir. 2000)).

Establishing a *prima facie* case for failure to promote "generally [] require[s] a plaintiff to allege that she or he applied for a specific position or positions and was rejected therefrom . . . ." *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 710 (2d Cir. 1998). The exception to this rule is "narrow" and requires an employee to demonstrate that "(1) the vacancy at issue was not posted, and (2) the employee either had (a) no knowledge of the vacancy before it was filled or (b) attempted to apply for it through informal procedures endorsed by the employer." *Pestrosino v. Bell Atlantic*, 385 F.3d 210, 227 (2d Cir. 2004); *see also Malarkey v. Texaco, Inc.*, 983 F.2d 1204, 1213 (2d Cir. 1993) (allowing discrimination claim without formal application process where "discriminatory practices deter[red] application or ma[de] application a futile endeavor" due to employer having "no formal job-positing or application system; rather [a high-ranking employee] played the key role, recommending candidates to managers with openings").

Avangrid argues that Ms. Elliott has failed to make out a *prima facie* case of discrimination for the Senior Employee - Labor Relations Analyst, Manager – Talent Acquisition, and Manager – Employee and Labor Relations roles that she did not apply to,

because actual application to the roles is "a required element" of the claim. Memo. in Supp. at 25.

In response, Ms. Elliott argues that there is evidence that "the defendant misled [her] into not applying for the positions by untruthfully telling her that it would not consider her for any of the three positions because she lacked essential job qualifications." Memo. in Opp at 23. "Misleading" her to keep her from applying to these positions, Ms. Elliott argues, "brings the case within the exception to the 'no apply/no case' rule." *Id.* Ms. Elliott also argues that for the Manager – Employee Labor Relations role, the application process was a "sham" because the successful employee was offered the job before the job posting was listed.

In reply, Avangrid argues that Ms. Elliott's assertions that she was "misled," based solely on her own deposition, cannot form the basis for denial of summary judgment, and notes that the feedback that "somehow discouraged her from applying" were given years before these roles were posted and "when an entirely different hiring manager" was hiring for the positions. Reply at 17. Avangrid also argues that none of the exceptions to the application requirement apply here.

The Court agrees.

As noted above, consistent with Second Circuit caselaw, "[t]o be excused from the specific application requirement," *Pestrosino*, 385 F.3d at 227, Ms. Elliott "must demonstrate that (1) the vacancy at issue was not posted, and (2) the employee either had (a) no knowledge of the vacancy before it was filled or (b) attempted to apply for it through informal procedures endorsed by the employer." *Id.* But, for the Senior Employee - Labor Relations Analyst and Manager – Talent Acquisition roles, Ms. Elliott has not provided any record evidence that the vacancy was not posted, that she had no knowledge of the posting or that she attempted to apply to the posting through informal means. Furthermore, her allegations of having expressed interest

in these roles, only to be told that she was unqualified, also falls short as a matter of law. *See, e.g.*, *Brown*, 163 F.3d at 710 ("If generally requesting a promotion . . . were sufficient to establish a prima facie case, employers would be unfairly burdened in their promotion efforts. Rather than simply considering individuals who have specifically applied for a promotion, an employer would additionally have to keep track of all employees who have generally expressed an interest in promotion and consider each of them for any opening for which they are qualified but did not specifically apply."); *id.* ("Brown asserts that the general rule does not hold here . . . [because] the aura of discrimination at Coach so discouraged Brown that she ceased making application to specific positions after 1995. We are not persuaded that either allegation exempts Brown from the general pleading requirements.").

While Ms. Elliott does provide record evidence that the successful applicant to the Manager – Employee and Labor Relations role, Alexis Bravo, was informally offered the job before the formal posting of the job opening.,[4] *see* Memo. in Opp. at 34 ("In posting a notice of vacancy for the position of Manager – Employee and Labor Relations, with a five-day period for the submission of applications, the defendant acted duplicitously, since it had already extended on August 9, 2022, a job offer of employment to Alexis Bravo to the position before the vacancy was even posted."), an informal hiring process does not excuse an employee from the requirement of applying, "at least informally, for the *specific* management position[]" at issue. *Petrosino*, 385 F.3d at 227 (emphasis in original).

---

[4] Avangrid responds to Ms. Elliott's factual allegations related to the hiring of Ms. Bravo by noting that it "began recruiting" for the Manager – Employee and Labor Relations role in 2022, and that "[a]s a result of those recruiting efforts," Ms. Bravo was "identified as an exceptional candidate . . . though she was not formally hired into the position at that time." Response to Additional Facts, 8, ECF No. 58-1 (Mar. 26, 2025). After identifying Ms. Bravo, Avangrid allegedly "posted the position internally . . . to provide other candidates the opportunity to apply." *Id.* at 9. For the purposes of the summary judgment motion, however, the Court considers the facts as Ms. Elliott presents them. *See Dufort*, 874 F.3d at 343 ("On a motion for summary judgment, the court must 'resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought.'").

17

And there is nothing in this record as to Ms. Elliott having formally applied once the position was actually posted, or speaking to anyone informally about this specific vacancy (as opposed to the vacancy for the same position two years before). *See Wong v. Kings Cnty. Dist. Atty's Office*, No. , 2004 WL 692165, at *4 (E.D.N.Y. Mar. 31, 2004) ("The record further reflects that once Wong discovered that a promotion was available (as evidenced, at the latest, by the writing of the Memo), he did not adequately make his desire to be promoted known to his supervisors[.] . . . It does not ask too much of an employee to require that he or she express, in words or substance, 'I want the job,' as a condition for bringing a discrimination action when the employee does not get the job."); *cf. Mauro v. Southern New England Telecomm., Inc.*, 208 F.3d 384, 387 (2d Cir. 2000) (finding exception to the application requirement where "the record suggests that [the plaintiff] clearly indicated his interest in a promotion to a Level Two position and that [the employer] promised him that he would receive a Level Two job as soon as one became available"). Thus, she has failed to establish a *prima facie* case of discrimination for the positions to which she did not apply.

Moreover, even if Ms. Elliott could demonstrate a *prima facie* case for discrimination for these positions, she has not put forth any evidence of discriminatory intent for the decision not to promote her to these positions. She argues that the "blatant rigging of the selection process by the defendant in favor of [Ms.] Bravo is additional evidence that the reason for her selection, that she was more qualified than the plaintiff, was pretextual." Memo. in Opp. at 34. But an employer hand-picking of a younger employee for promotion does not, in and of itself, provide evidence of discrimination. *See Mauro*, 208 F.3d at 378–88 ("The record also indicates, however, that when two Level Two jobs opened, [the employer] hand-picked individuals to fill those positions without informing [the plaintiff] that the jobs were available. . . . [The employer] proffered

legitimate, non-discriminatory reasons for placing both [successful candidates] into their respective Level Two jobs. . . . [The plaintiff] has offered no evidence that these reasons were pretextual, nor has he produced any evidence that age discrimination in any way motivated [the employer]'s failure to promote him.").

Accordingly, the motion for summary judgment will be granted to the extent Ms. Elliott's claims are based on the positions to which she did not apply.

*ii.    The Positions to Which Ms. Elliott Did Apply*

Ms. Elliott alleges that she applied for and was not hired to the Operator Qualification Analyst role (two open positions); the Senior Operator Qualification Analyst role (two open positions); the Manager - Operator Qualification role; the Analyst – DG role, the Lead Analyst – Financial Reporting; and the Lead Analyst – Hardship Program Administrator role due to age discrimination. *See* Compl. ¶ 169.

Avangrid argues that for each role, Ms. Elliott was not hired because she was not qualified or less qualified than the successful candidate. *Id.* at 26–44. Avangrid also argues that there is no inference of discrimination because the hiring managers for each the positions did not know Ms. Elliott or her age. *Id.* at 26. Avangrid also argues that even if Ms. Elliott could demonstrate a *prima facie* case of discrimination, she cannot show that the proffered nondiscriminatory reasons are pretextual or that the cause of her not being hired was unlawful age discrimination. *Id.* at 26.

In response, Ms. Elliott first highlights what she refers to as "flawed legal theories" in Avangrid's arguments—namely, the "same group defense", focus on "age-protected" hiring managers and successful candidates, and that Avangrid's alleged reliance only on "self-serving" affidavits from employees. Memo. in Opp. at 1–14. Ms. Elliott also argues that she has

19

demonstrated her qualifications for the roles sufficient for the purposes of demonstrating a *prima facie* case and that Avangrid's argument that hiring managers would not have known her age is "not credible" because each hiring manager would have had access to personnel files with ages. *Id.* at 22–24. She also states that there is evidence of pretext due to the favoring of specific candidates and the previous internal investigation that found she was denied an interview for a position she had the minimum qualifications for. *Id.* at 26–28.

In reply, Avangrid argues that Ms. Elliott failed to present evidence establishing that her age was the "but-for" cause of her not being hired and that she failed to present admissible evidence that its reasons for hiring others were pretextual. Reply at 4–7. Avangrid also argues, on the basis of new affidavits, that hiring managers would not have access to personnel files with applicants' ages. *See id.* 4 n.4.

The Court agrees.

As a preliminary matter, as to any arguments about "self-serving" evidence, the Second Circuit has warned that "as a general rule, a district court may not discredit a witness's deposition testimony on a motion for summary judgment because the assessment of a witness's credibility is a function reserved for the jury." *Fincher v. Depository Trust and Clearing Corp.*, 604 F.3d 712, 725 (2d Cir. 2010); *Danzer v. Norden Systems, Inc.*, 151 F.3d 50, 57 (2d. Cir. 1998) ("To hold, as defendants ask us to do, that the nonmovant's allegations of fact are (because 'self-serving') insufficient to fend off summary judgment would be to thrust the courts—at an inappropriate stage—into an adjudication of the merits."). Thus, the Court will not simply disregard any evidence in the record because it is alleged to be "self-serving." To the extent, however, that any party relies on "mere conclusory allegations or denials," such statements are insufficient to at the summary judgment stage. *Podell v. Citicorp Diners Club, Inc.*, 112 F.3d 98,

101 (2d Cir. 1997) (quoting *Quinn v. Syracuse Model Neighborhood Corp*., 613 F.2d 438, 445

(2d Cir.1980)). And, in all instances, the Court must "resolve all ambiguities and draw all factual

inferences in favor of the nonmoving party." *Cestaro v. Prohaska*, 681 F. Supp. 3d 121, 125

(S.D.N.Y. 2023)

As to Ms. Elliott's arguments about the "same group defense," or the implication that a

hiring manager who is protected under the ADEA cannot be discriminatory, and the substantially

younger requirement, the Court will assess these legal doctrines in their appropriate context.

### 1.  *Prima Facie Case of Age Discrimination*

"A plaintiff alleging a violation of [the ADEA] must establish, by a preponderance of the

evidence, a prima facie case consisting of four elements: (1) that plaintiff falls within the

protected group, (2) that plaintiff applied for a position for which he was qualified, (3) that

plaintiff was subject to an adverse employment decision and (4) that the adverse employment

decision was made under circumstances giving rise to an inference of unlawful discrimination."

*Byrnie v. Town of Cromwell, Bd. Of Educ.*, 243 F.3d 93, 101 (2d Cir. 2001).

Ms. Elliott has easily satisfied two prongs of a *prima facie* case: she was in the protected

class of the ADEA when she was not hired to the relevant positions, and not being promoted

constitutes an adverse employment action.

Ms. Elliott argues that a jury could find she was qualified for each of the positions she

applied to due to her "education background, her professional experience, and her employment

history." Memo. in Opp at 24. Since the standard for demonstrating qualification for a position in

a *prima facie* case is "minimal" and a "plaintiff must show only that [she] possesses the basic

skills necessary for performance of the job," *Donnelly v. Greenburg Cent. School Dist. No. 7*,

691 F. 3d 134, 151 (2d Cir. 2012), Ms. Elliott has at least demonstrated an issue of material fact

as to whether or not she was qualified for each position. *See also Gibson v. Am. Broadcasting Co., Inc.*, 892 F.2d 1128, 1131 (2d Cir. 1989) (assuming on summary judgment "that the allegations contained in the plaintiff's respective complaints regarding their qualifications for the positions they sought are true" for the purposes of demonstrating a *prima facie* case). Thus, Ms. Elliott has satisfied the first three prongs of a *prima facie* case with respect to all positions she applied to.

She has not, however, shown that for all positions "the adverse employment decision was made under circumstances giving rise to an inference of unlawful discrimination." *Byrnie*, 243 F.3d at 101. For all positions, Ms. Elliott argues that the fourth prong of a *prima facie* case has been met because Avangrid "selected someone substantially younger than the plaintiff" for each of the positions. Memo. in Opp. at 24.

Generally, "an employer's decision to replace an older worker with a significantly younger one can support an inference of intentional age discrimination." *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 78 (2d Cir. 2005). For such an inference to be made, an employer must have knowledge of "the significant age discrepancy." *Id.* at 79.

As to the Analyst – DG role, the successful candidate was 58 years old. *See* Memo. in Opp. at 10 n. 5. Since her birthdate is December 10, 1963 and she applied on September 8, 2022, Ms. Elliott, on the date she applied, would have also been 58 years old. Ms. Elliott argues only that this candidate should be considered substantially younger because "[i]n the light of the never ending refusal to promote the plaintiff, even a difference of one year could be viewed as substantial." *Id.* at 25 n. 9. But the record does not even demonstrate an age difference of a year, and even assuming an age gap of approximately a year, such a gap without more, does not support an inference of discriminatory intent. *See, e.g., Woodman*, 411 F.3d at 76 ("Thus, a 40–

year old is unquestionably a member of the ADEA protected class, but if that person is

discharged and replaced by a 39–year old, the 1–year age discrepancy, without more, will not

likely support an inference of discriminatory intent.").

For one of the Operator Qualification Analyst positions, the Senior Operator

Qualification Analyst positions, the Manager - Operator Qualification position, the Lead Analyst

– Financial Reporting position, and the Lead Analyst – Hardship Program Administrator

position, the successful candidates ranged from 35 to 43 years old, and each could be considered

"substantially younger" than Ms. Elliott. For the Operator Qualification Analyst position the

successful candidate was 53 in late 2022, only five or six years younger than Ms. Elliott. While

some courts have considered such an age gap not to be "substantially younger," *see, e.g.*, *Estepa*

*v. Shad*, 652 F. Supp. 587, 572 (E.D.N.Y. 1987) ("The six-year age difference between White

and plaintiff does not render White 'substantially younger.'"), the Court will assume *arguendo*,

for the purposes of the *prima facie* analysis, that this candidate was substantially younger than

Ms. Elliott.

Even if the successful candidates are substantially younger than Ms. Elliott, however,

Avangrid argues that the hiring managers for these positions were unaware of the age differences

between Ms. Elliott and the successful applicants and presents affidavits stating that each hiring

manager did not know Ms. Elliott and her age. *See* Memo. in Supp. at 7 (referring to the two

open Operator Qualification Analyst positions, "Ms. Portelli had never personally met Plaintiff

and did not know Plaintiff's age at the time she reviewed candidates for this role, nor did she

know the age of the other candidates whom she considered and/or eventually hired for this

role."); *id.* at 10 (referring to the two open Senior Operator Qualification Analyst positions, "Ms.

Portelli had never personally met Plaintiff and did not know Plaintiff's age at the time she

reviewed the candidates for these roles, nor did she know the ages of any of the candidates whom she considered or eventually hired for the Senior Operator Qualification Analyst roles in 2022."); *id.* at 12 (referring to the Manager – Operator Qualification, "Mr. Ferreira Ribeiro had never personally met Plaintiff and did not know Plaintiff's age at the time he reviewed candidates for this role, nor did he know the age of the other candidates whom he considered for the role and/or hired for the role."); *id.* at 17 (referring to the Lead Analyst – Financial Reporting position, "Ms. Lyons did not know Plaintiff's age at the time she reviewed candidates for this role, nor did she know the age of the other candidates whom she considered for the role and/or eventually hired for the role."); *id.* at 19 (referring to the Lead Analyst – Hardship Program Administrator position, "Ms. Wasilnak had not personally met Plaintiff and did not know Plaintiff's age at the time she reviewed candidates for this role, nor did she know the age of the other candidates whom she considered for the role and/or eventually hired for the role.").

Ms. Elliott argues that the age of the applicants in each case would have been in their personnel files and that "it would be derelict on the part of the hiring managers . . . not to review the personnel files of the applicants." Memo. in Opp. at 26. Ms. Elliott's assertion that the hiring managers for each of these positions would have had access to age identifying information, however, is conclusory.

In support of her contention on access to personnel files, she presents only testimony from Michael Bogue, the Director of Labor and Employee Relations, on access to employees' ages for the purposes this litigation, not in hiring or the normal course of business. *See* Pl.'s Response to Def. SOF ¶ 95 ("Obviously in claiming that the plaintiff did not have the necessary qualifications for the position, a trier of fact could infer that Ferreira Ribeiro reviewed the plaintiff and the other candidate's personnel files. These personnel files would have age

identifying information." Bogue Tr. 10:21-24; 14:25-15:9."); Bogue Tr., Exhibit 2, ECF No. 52-2 (Feb. 10, 2025) ("Q: The statement is that 'The Respondent lacks sufficient knowledge or information.' And that's used throughout this Answer. It wasn't in-house counsel who swore to the truth of it, it was you who swore to the truth of it. And I'm not asking you whether it's truthful if she's 40 or not over 40, or under 40, what I'm asking, is it truthful that the company lacks information and knowledge as to the age of its employees? A. Can you repeat the question? Q. Is it truthful that the company lacks information and knowledge as to the ages of its employees? . . . Q: My question is: In 2023, when you signed the oath, did you have access to information to verify the ages of these people identified in this exhibit 1? A. If they were currently still employed, yes.").

Thus, while the record could demonstrate that some employees of Avangrid would at some times have access to personnel files with age-identifying information, this is insufficient, as "even at the *prima facie*" stage, there must be evidence to support a reasonable inference "that the defendants (specifically the decision-makers who ordered [the adverse action]) actually knew . . . of [the plaintiff's] age relative to that of her replacement." *Woodman*, 411 F.3d at 87. For example, the Second Circuit has found that knowledge could be inferred from records when there was evidence that the individual making the adverse hiring decisions personally "reviewed the District's legal files when he was hired in 2001, and those files contained Bucalo's EEOC complaint, which listed her date of birth." *Bucalo v. Shelter Island Union Free School Dist.*, 691 F.3d 119, 130 (2d Cir. 2012). The evidence provided here, by contrast, does not allow for the reasonable inference that the specific hiring managers had access to any records with age identifying information during the hiring process.

Moreover, while one might reasonably assume that age differences would be apparent if those taking the adverse interaction had regularly interacted with Ms. Elliott and other candidates on the job, or even during an interview, the record demonstrates that Ms. Elliott was not interviewed for the Operator Qualification Analyst, Senior Operator Qualification Analyst, Manager - Operator Qualification, and Lead Analyst – Hardship Program Administrator positions, and she makes no argument that she otherwise met or interacted with the hiring managers for these positions. *Cf. Tremalio v. Demand Shoes, LLC*, No. 3:12-cv-00357, 2013 WL 5445258, at *5 (D. Conn. Sept. 30, 2013) ("Even if Defendant was not aware of the exact age of Plaintiff's replacement at the time she was hired, it is very difficult to believe that the relative age and gender differences between Plaintiff, a man in his mid–60s, and his replacement, a woman allegedly in her late 20s, were not obvious to Defendant."). Thus, for the Operator Qualification Analyst, Senior Operator Qualification Analyst, Manager - Operator Qualification, and Lead Analyst – Hardship Program Administrator positions, Ms. Elliott has not provided sufficient evidence to raise a material issue of fact as to the knowledge of the candidates, and therefore as to whether or not the circumstances around the adverse employment action create an inference of discrimination.[5]

For the Lead Analyst – Financial Reporting position, Ms. Elliott was interviewed. Considering the "minimal" burden at the *prima facie* stage, *Woodman*, 411 F.3d at 76, this could create the inference that the hiring manager, Ms. Lyons, had identified Ms. Elliott's approximate age during the course of interacting with her in the interview. *See, e.g.*, *Sedelnik v. City of*

---

[5] Avangrid argues in reply that most employees "do not have access to employees' personnel files, including any age information that could be in personnel files," and that "Lisa Portelli, Carlos Eduardo Ferreira Ribeiro, Cornelius Stevenson, Robin Lyons, and Kathleen Wasilnak did not have access to any candidate's personnel file, including Plaintiff's personnel file, prior to making any of the hiring decisions at issue in this case." Reply at 4 n.4. Avangrid's arguments to this point cite new affidavits for the hiring managers and other employees. *See id.* While the inadequacy of the arguments and evidence raised by Ms. Elliott are sufficient for the Court's knowledge determination, the Court notes that these affidavits further support its conclusion.

*Bridgeport*, 837 F. Supp. 2d 12, 18 (D. Conn. 2011) (finding that access to personnel records, "age-related remarks", and fact that applicants were interviewed was "sufficient evidence" of knowledge of age). Furthermore, since the selected candidate, E.F., was 38 years old, he would be considered "substantially younger" than Ms. Elliott. There is thus at least a material issue of fact as to whether Ms. Lyons knew of the relative ages of E.F. and Ms. Elliott and as to whether the decision not to hire Ms. Elliott occurred in circumstances giving rise to an inference of discrimination.

Accordingly, Ms. Elliott has demonstrated a *prima facie* case for the adverse employment action of failure to hire her for the Lead Analyst – Financial Reporting role. Ms. Elliott has not, however, demonstrated a *prima facie* case for the failure to hire her for the Analyst – DG, Operator Qualification Analyst, Senior Operator Qualification Analyst, Manager - Operator Qualification, and Lead Analyst – Hardship Program Administrator positions, and thus summary judgment is granted to the extent the ADEA age discrimination claim is based on those roles.

## 2. *Nondiscriminatory Hiring Reason*

Since Ms. Elliott has demonstrated a *prima facie* case of age discrimination for the failure to hire her to the Lead Analyst – Financial Reporting role, the burden shifts to Avangrid to demonstrate a "legitimate, nondiscriminatory reason." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142 (2000). This burden "is one of production, not persuasion; it 'can involve no credibility determination.'" *Id.* (quoting *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 509 (1993)).

Avangrid argues that E.F. was hired due to superior qualifications. Specifically, that Ms. Elliott "did not have the capital finance background needed," while E.F. "based on his prior work experience, already understood the terminology, concepts, and processes need for the role."

Memo. in Supp. at 41. Avangrid additionally states that Ms. Lyons "found E.F. to be more qualified given he had twelve (12) years of prior experience working in operations, including over nine (9) years of experience supporting Gas Operations specifically in numerous analyst duties and understood, from a financial perspective, the nuances surrounding the Company's distribution operations projects." Reply at 15. Avangrid supports these contentions with an affidavit from Ms. Lyons. Superior qualifications is a legitimate nondiscriminatory reason for hiring E.F. instead of Ms. Elliott. *See, e.g.*, *Gaffney v. Dep't of Information Tech. & Telecommunications*, 536 F. Supp. 2d 445, 464 (S.D.N.Y.  2008) (finding that evidence that candidate hired "was significantly more qualified than plaintiff" and specifically "possessed superior supervisory skills and experience" was sufficient to meet burden of demonstrating legitimate, nondiscriminatory reason).

Accordingly, Avangrid has met its burden "by offering admissible evidence sufficient for the trier of fact to conclude," *Reeves*, 530 U.S. at 142 that Ms. Elliott was not hired for Lead Analyst – Financial Reporting position due to a nondiscriminatory reason.

### 3.  *Evidence of Pretext*

When an employer offers evidence of a nondiscriminatory reason for the adverse employment action, the plaintiff must "offer direct evidence of an improper discriminatory bias" or "defeat summary judgment on the strength of [her] prima facie case combined with circumstantial evidence that the [employer's] stated reason for failing to hire [the plaintiff] is pretext." *Byrnie*, 242 F.3d at 102.

Ms. Elliott argues that the nondiscriminatory reasons for hiring E.F. are pretextual and false because "contemporaneous communications . . . prove[] the duplicity" of Ms. Lyons. Memo. in Opp. at 27. Specifically, Ms. Elliott argues that Ms. Lyons's "pleading with E.F." to

get him to apply supports her contentions that Ms. Lyons's statements made in her affidavit are false. *Id.* at 27. Ms. Elliott also argues that Avangrid's "refus[al]" to interview Ms. Elliott for the Project Manager – Security position and subsequent statements by the investigator that she met the minimum qualifications "buttress the evidence of pretext." *Id.* at 28.

Avangrid argues that the fact Ms. Lyons was 56 and thus also protected by the ADEA, which makes it "less plausible" that she discriminated against Ms. Elliott. Memo. in Supp. at 41. To this point, Avangrid also notes that Ms. Lyons later hired Ms. Elliott for her current role. *Id.* Avangrid also argues that Ms. Elliott cannot "rebut" the reasons provided regarding E.F.'s credentials, and that the fact that Ms. Lyons sought out and accepted an additional application after interviewing E.F. "only further illustrates" that Ms. Elliott lacked the qualifications to succeed in the role. Reply at 15. Ultimately, Avangrid argues that Ms. Elliott "has not proffered any evidence refuting Ms. Lyons' sworn testimony that she hired E.F. because she sincerely (and correctly) found E.F. to be more qualified." Reply at 15.

The Court agrees.

As an initial matter, as discussed above, any claim related to alleged discriminatory treatment for the failure to hire or interview Ms. Elliott for the Project Manager – Security position is untimely. Furthermore, Ms. Elliott provides no rationale for why her not being interviewed for the Project Manager – Security position has any bearing on the hiring processes challenged at present. She does not suggest—nor is there anything in the record—for instance, that Ms. Lyons was also the hiring manager for the Project Manager – Security position. Most importantly, there is no evidence that the failure to interview Ms. Elliott for the Project Manager – Security position, although arguably ill-advised, was due to age discrimination. *Cf. Richane v. Fairport Central School Dist.*, 179 F. Supp. 2d 81, 89 (W.D.N.Y. 2001) ("What matters is why

[the employer] did what it did, not whether it was wise to do so. The ADEA prohibits discrimination, not poor judgment.").

Ms. Elliott does present evidence that would allow a rationale juror to conclude that Ms. Lyons invited E.F. to apply for the Lead Analyst – Financial Reporting position after she interviewed Ms. Elliott. That evidence, however, does not support an inference that Ms. Lyons did not make her decisions based on the qualifications of the candidates. *See, e.g.*, *Gaffney*, 536 F. Supp. 2d at 465 ("Further, Stewart has not produced sufficient evidence suggesting that Defendants' proffered reason was pretext for discrimination. Although the evidence Stewart has put forth would allow a rational juror to conclude that Defendants preselected particular Foundation Line Employees prior to conducting interviews, this consideration alone, under the circumstances before the Court, does not demonstrate by a preponderance of the evidence that race or age discrimination were the real reasons behind Defendants' decision."). Indeed, assuming they would be admissible evidence, the e-mails relied on by Ms. Elliott, if anything, tend to confirm Ms. Lyons's contentions that the decision was based on the candidates' respective qualifications, not Ms. Elliott's age. *See, e.g.*, Exhibit 12, ECF No. 52-16, at p. 29–30 (Feb. 10, 2025) ("[Ms. Lyons]: I just interviewed [E.F.] He actually did very well and has more experience with what the duties are than [Ms. Elliott] or than [Mr. Elliott] conveyed in her interview. I think we should proceed with making an offer to [E.F.]"); *cf. Matthews v. Huntington*, 499 F. Supp. 2d 258, 266 (E.D.N.Y. 2007) ("However, no reasonable jury could conclude that the allegedly inconsistent statements cited by plaintiff are, in fact, in conflict with one another. Instead, they all reflect the reason cited by Stehly at the time of plaintiff's termination—that plaintiff was fired due to his behavior during the encounter with Napolitano.").

And, even assuming the evidence proffered by Ms. Elliott contradicts Avangrid's assertions, she "still has the burden of establishing that [Avangrid's] real reason for not hiring [her] was on account of unlawful discriminations." *Gaffney*, 536 F. Supp. 2d at 467; *see also Reeves*, 530 U.S. at 143 ("Although intermediate evidentiary burdens shift back and forth under this framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" (quoting *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981))).

Offering no other evidence, Ms. Elliott has not met this burden.[6] *See, e.g.*, *Gaffney*, 536 F. Supp. 2d at 467 ("Even assuming that Defendants' proffered reason was false, Stewart still has the burden of establishing that Defendants' real reason for not hiring him was on account of unlawful discrimination. Stewart again asserts that Defendants' alleged preselection establishes that the proffered reason was merely a pretext for discrimination, but as the Court stated above, under these circumstances, preselection alone does not sufficiently establish by a preponderance of the evidence that unlawful discrimination was Defendants' real reason. Accordingly, Stewart has not met his burden of establishing that Defendants' nondiscriminatory reason for failing to hire him as an MCO was merely pretext for unlawful discrimination." (citatons omitted)); *Matthews*, 499 F. Supp. 2d at 266 ("In any event, even assuming *arguendo* that defendants offered inconsistent reasons for firing plaintiff, there is nothing to suggest that the reasons were a

---

[6] While Ms. Lyons's close age (56) to Ms. Elliott and membership in the class protected by the ADEA is not dispositive, there is a "well-recognized inference against discrimination [] where the person who participated in the allegedly adverse decision is also a member of the same protected class." *Drummond v. IPC Intern., Inc.*, 400 F. Supp 2d 521, 532 (E.D.N.Y. 2005) (citing *Marlow v. Office of Court Admin. of New York*, 820 F. Supp. 753, 757 (S.D.N.Y.1993), *aff'd*, 22 F.3d 1091 (2d Cir.1994)). As Ms. Elliott notes, "it would be unwise to presume as a matter of law that human beings of one definable group will not discriminate against other members of their group." *See* Memo. in Opp. at 6 (quoting *Oncale v. Sundownwer Offshore Services, Inc.*, 523 U.S. 75, 78 (1998)). Nevertheless, the fact "provides an additional inference which the plaintiff must overcome" *Drummond*, 400 F. Supp. 2d at 532, and supports the Court's conclusion. *See, e.g.*, *Matthews*, 499 F. Supp. 2d at 267 ("Furthermore, although not dispositive, the fact that Stehly and Geiser—the decisionmakers with regard to plaintiff's firing—were forty-five and fifty-six years old, respectively, weakens any inference that the decision to fire plaintiff was based on his age.").

pretext for age discrimination. Significantly, plaintiff points to no comment, action, or fact that even remotely suggests defendant's decision to fire him was based on his age, except the fact that he was sixty-four years old." (citations omitted)).

Accordingly, Ms. Elliott has not established a material issue of fact as to whether Avangrid failed to hire her for the Lead Analyst – Financial Reporting position due to age discrimination, and summary judgment will be granted on the ADEA age discrimination claim.[7]

### b. Retaliation Under the ADEA

The *McDonnell Douglas* burden-shifting framework is also applied to claims of retaliation under the ADEA. *Bucalo v. Shelter Island Union Free Sch. Dist.*, 691 F.3d 119, 129 (2d Cir. 2012). To establish a prima facie case of retaliation, "a plaintiff must show (1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Id.* (quoting *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005)).

"[P]roof of causation can be shown either: (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2)

---

[7] While the Court finds that Ms. Elliott has not presented a *prima facie* case of age discrimination for the other positions she applied to, if she had, her claim in regard to those positions would have failed for the reasons provided here. As to the Senior Operator Qualification Analyst position, Ms. Elliott's assertions of pretext focus on the hiring manager's "favor[itism]" of the successful candidate, similar to her allegations regarding the Lead Analyst – Financial Reporting position. Memo. in Opp. at 26. As explained, however, preselection or favoritism is insufficient to demonstrate that the employer's decision was based on discriminatory animus. As to the Analyst – DG, Operator Qualification Analyst, Senior Operator Qualification Analyst, Manager - Operator Qualification, and Lead Analyst – Hardship Program Administrator positions, Ms. Elliot presents no evidence of discriminatory intent or that Avangrid's proffered nondiscriminatory reasons are pretextual. *See, e.g.*, *Tavarez v. Nagatuck Bd. Of Educ.*, 2012 WL 1435284, at *6 (D. Conn. Apr. 25, 2012) ("Because Plaintiff does not present evidence to establish a prima facie case of national-origin or age discrimination and presents no significant evidence that either protected factor played a role in the decision at issue, summary judgment against these claims is appropriate.").

directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Hicks v. Baines*, 593 F.3d 159, 170 (2d Cir.2010) (quoting *Gordon v. N.Y. City Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000)). A plaintiff must demonstrate "but-for" causation, meaning she must provide "proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Lively v. WAFRA Investment Advisory Grp., Inc.*, 6 F.4th 293, 304 (2d Cir. 2021) (quoting *University of Texas Southwestern Medical Center v. Nassar*, 570 U.S. 338, 360 (2013)).

"If a plaintiff sustains the initial burden, a presumption of retaliation arises. In turn, under the second step of the burden-shifting analysis, the onus falls on the employer to articulate a legitimate, non-retaliatory reason for the adverse employment action. Finally, as for the third step, once an employer offers such proof, the presumption of retaliation dissipates and the employee must show that retaliation was a substantial reason for the adverse employment action" *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005) (citations omitted).

Avangrid argues that for each position, Ms. Elliott has failed to demonstrate a *prima facie* case of retaliation. Specifically, Avangrid argues that Ms. Elliott cannot demonstrate causation because each of the hiring managers were unaware of her internal complaints and the time between the filing of her complaints and the applications to the positions was too attenuated to create an inference of causation through circumstantial evidence. *See* Memo. in Supp. at 45–54. Avangrid also argues that even if Ms. Elliott could demonstrate a *prima facie* case of retaliation, it has produced evidence of a nondiscriminatory reason for her not being hired—namely, that she was not deemed the most qualified candidate for any of the positions. *Id.*

Ms. Elliott argues that she has demonstrated a *prima facie* case of retaliation because the "temporal proximity" between the filing of her internal complaints and the failure to fire or

promote her. Memo. in Opp. at 38. Particularly, Ms. Elliott states that she filed her third

discrimination complaint on May 6, 2022, and was denied promotions to the Analyst - DG,

Manager - Employee and Labor Relations, and Manager - Talent Acquisition positions four

months later. *Id.* at 37. She also states she was denied a promotion for the Lead Analyst -

Financial Reporting position eight months after the filing of her third complaint. *Id.* Ms. Elliott

also argues there is evidence of pretext because the successful candidates for the Manager –

Employee and Labor Relations and Manager – Talent Acquisitions positions lacked

qualifications necessary for the positions, and that for the Lead Analyst – Financial Reporting

position, Ms. Lyons's states reasons for not hiring her were "refuted by her on contemporaneous

communications." *Id.* at 40.

In reply, Avangrid argues that "the lack of knowledge by the actual decision-makers in

this case is fatal to [Ms.Elliott]'s ability to demonstrate any causal connection between her

complaints and any of the hiring decisions at issue in this case." Reply at 21. Avangrid also

argues that Ms. Elliott has not and cannot "present any evidence demonstrating that [Avangrid]'s

legitimate reasons for not selected her . . . were pretextual."

The Court agrees.

As an initial matter, Ms. Elliott again raises the Manager – Employee and Labor

Relations and Manager – Talent Acquisitions positions, both of which she did not apply to. As

discussed above, Ms. Elliott cannot bring a claim for these positions because she did not apply to

them and has not demonstrated that any exceptions to the application requirement are applicable.

*See, e.g.*, *Gupta v. New York City School Const. Authority*, 305 F. App'x 687, 690 (2d Cir. 2008)

("Because Gupta cannot claim retaliation based on defendant's failure to rehire him for a position

for which he did not apply, this claim was properly dismissed." (citing *Petrosino*, 385 F.3d at

34

226-227, and *Brown*, 163 F.3d at 710)) (summary order); *McGrier v. Capital Cardiology*, No. 1:20-cv-1044 (BKS) , 2022 WL 2105854, at *17 (N.D.N.Y. June 10, 2022) ("Although a second Holter Monitor Tech position was allegedly filled on April 5, 2019, just weeks after Plaintiff's alleged protected conduct, there are no allegations that Plaintiff inquired into, or displayed any interest in, that position following his March 2018 inquiry. Thus, Plaintiff fails to allege retaliatory failure to promote with respect to the April 2019 Holter Monitor Tech position." (citations omitted)).

As to the remaining positions, the parties do not dispute that Ms. Elliott engaged in protected activity (her three internal complaints alleging discrimination and retaliation), or that she had experienced an adverse employment action (not being hired or promoted into other roles). She has thus met those two prongs of the *prima facie* case.

As to the knowledge prong, Ms. Elliott has demonstrated "general corporate knowledge" as she filed an internal complaint and several Avangrid employees, including executives were aware of the complaints. This satisfies the knowledge requirement. *See, e.g.*, *Zann Kwan v, Andalex Group LLC*, 737 F.3d 834, 844 (2d Cir. 2013) ("With respect to the knowledge prong, . . . for purposes of a prima facie case, a plaintiff may rely on 'general corporate knowledge' of her protected activity[.] . . .  Here, the plaintiff made her September 3 complaint to Alex Silverman, an officer of the corporation. This complaint was sufficient to impute to Andalex general corporate knowledge of the plaintiff's protected activity. . . . Therefore, Kwan satisfied the knowledge prong of the prima facie case."); *Papelino v. Albany College of Pharmacy of Union University*, 633 F.3d 81, 92 (2d Cir. 2011) ("Even if the agents who carried out the adverse action did not know about the plaintiff's protected activity, the 'knowledge' requirement is met if the legal entity was on notice.").

For the causation prong, however, "a lack of knowledge on the part of particular individual agents" is relevant to "counter[ a] plaintiff's circumstantial evidence of proximity or disparate treatment." *Gordon v. New York City Bd. Of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000). Although, even the decision maker denies actual knowledge, the causation prong can be fulfilled "so long as the jury [could] find[] that the circumstances evidence knowledge of the protected activities or the jury [could] conclude[] that an agent is acting explicitly or implicit upon the orders of a superior who has the requisite knowledge." *Id.*

Here, Ms. Elliott provides no record evidence that any of the hiring managers had actual knowledge of her complaints, or that any of their supervisors had knowledge of the complaints and, in turn, directed or encouraged them not to hire her. Instead, she relies wholly on temporal proximity to demonstrate a causation. For the positions she applied to, she points specifically to the Analyst - DG position, which she was denied four months after filing her third complaint, and the Lead Analyst - Financial Reporting position, which she was denied eight months after the filing of her third complaint. The Court will assume that this temporal proximity is sufficient to demonstrate an issue of fact regarding causation for the purposes of the *prima facie* case, even in consideration of Avangrid's evidence that the individual hiring managers did not know of Ms. Elliott's complaints. *Cf. Summar v Hofstra University*, 708 F.3d 115, 129 (2d Cir. 2013) ("The seven-month gap between Summa's filing of the instant lawsuit and the decision to terminate her employment privileges is not prohibitively remote. . . . [S]even months is within the temporal range that we have found sufficient to raise an inference of causation[.]").

Ms. Elliott has thus demonstrated a *prima facie* case of retaliation for the Analyst – DG and Lead Analyst – Financial Reporting positions.[8]

---

[8] Ms. Elliott makes no specific arguments as to, or even mentions, the causal connection between her complaints and Avangrid's failure to hire her for the Operator Qualification Analyst, Senior Operator Qualification Analyst,

Avangrid, in turn, submits that for both positions, Ms. Elliott was less qualified than the successful candidate. For the Analyst – DG position, Avangrid states: "Mr. Stevenson, the hiring manager for this role, chose not to interview Plaintiff because, from her resume, it appeared that she lacked the necessary qualifications for the role given she had no project coordination or management experience, no technical aptitude within distributed energy generation, and no self-driven data manipulation experience beyond retrieving such data, all of which were necessary skills for performing well in this role. . . . Mr. Stevenson hired D.M. into this role because that candidate already had prior experience performing the functions of the Analyst – DG job in her capacity as a contractor for the Company." As discussed previously, this explanation, and that provided above for the Lead Analyst – Financial Reporting role, are sufficient to demonstrate a legitimate, nonretaliatory motive for the adverse employment actions.

For the Analyst – DG position, Ms. Elliott provides no evidence or argument as to why Avangrid's stated rationale is pretextual. For the Lead Analyst – Financial Reporting position, Ms. Elliott argues that the contemporaneous e-mails from Ms. Lyons suggest that the stated rationale related to each candidate's respective qualifications is false, and that this, combined with the *prima facie* case is sufficient to show unlawful retaliation. Memo. in Opp. at 40–41.

Certainly an "inconsistent and contradictory explanation . . . combined with the close temporal proximity" of the protected activity and adverse employment actions can be "sufficient to create a genuine dispute of material fact as to whether" the defendant's proffered reason is pretextual. *Zann Kwan*, 737 F.3d at 845. For example, the Second Circuit found that an employer

---

Manager - Operator Qualification, and Lead Analyst – Hardship Program Administrator roles, thereby failing to demonstrate a *prima facie* case. And she does not provide evidence to demonstrate that Avangrid's proffered legitimate reasons for not hiring her into these roles is pretextual. The Court thus finds she has failed to make a claim of retaliation based on these roles. *See, e.g.*, *E.E.O.C. v. Bloomberg L.P.*, 967 F. Supp. 2d 816, 859 (S.D.N.Y. Sept. 9, 2013) ("Lancaster fails to offer any circumstantial evidence that would shed doubt upon Karmen's testimony [that he did not know of plaintiff's complaint.] The Court [thus] holds that Lancaster cannot make out a prima facie retaliation case." (citations omitted)).

offered a "shifting and somewhat inconsistent explanation" when it first stated that an employee was "terminated largely because of [the business's shift] . . . from domestic real estate to international gaming and hospitality"  and then later stated that the employee "was not terminated because of a shift in company focus", but rather was terminated due to "poor performance." *Id.* at 846–47.

Here, by contrast, as explained above, the record does not demonstrate "inconsistent and contradictory" explanations by Ms. Lyons for not hiring Ms. Elliott, contrary to Ms. Elliott's conclusory assertions. In e-mails cited by Ms. Elliott, Ms. Lyons stated that Ms. Elliott had "some of the skills" necessary for the position when receiving her resume. *See* Exhibit 12, ECF No. 52-16, at p. 23 (Feb. 10, 2025). Then, after interviewing Ms. Elliott and the successful candidate, Ms. Lyons concluded: "[E.F.] actually did very well and has more experience with what the duties are than [Ms. Elliott] or than [Mr. Elliott] conveyed in her interview." *Id.* at 29–30 (Feb. 10, 2025). Ms. Lyons's declaration prepared for litigation likewise states that Ms. Elliott lacked some skills necessary for the role that the successful application had. *See* Declaration of Robin Lyons, ECF No. 40-1 ¶¶ 13–14 (Nov. 15, 2024) ("I concluded that it would have been an enormous learning curve for Plaintiff to jump into the Lead Analyst Financial Reporting role without any prior operations experience to put the distribution operations projects into context. Further, Plaintiff did not have the capital finance background needed to perform this complex role. I hired E. F. for the Lead Analyst Financial Reporting role because he had prior experience working in gas operations and understood, from a financial perspective, the nuances surrounding the Company's distribution operations projects. For instance, based on his prior work experience, E.F. already understood the terminology, concepts, and processes needed for the Lead Analyst Financial Reporting role.").

Ms. Elliott offers no other evidence that Avangrid's proffered explanation was pretextual or that her discrimination complaints were the but-for cause of her not being hired, and thus has failed to create an issue of material fact. *See, e.g.*, *Joseph v. Owens Minor Distribution, Inc.*, 5 F. Supp. 3d 295, 320 (E.D.N.Y. 2014) ("Plaintiff . . . does not demonstrate the kind of 'weaknesses, implausibilities, inconsistencies, or contradictions' that [are] needed to show 'but-for' causation. . . . [T]here are no disputed facts that could reasonably suggest retaliation. Without any additional evidence that Defendant's decision to terminate Plaintiff was related to the complaints [about racial discrimination], Plaintiff cannot show that, but-for those complaints, he would not have been terminated."); *Varno v. Canfield*, 664 F. App'x 63, 66 (2d Cir. 2016) ("The defendants demonstrated a legitimate, non-discriminatory reason for terminating Varno: substandard performance. Varno offered no evidence demonstrating pretext, let alone that retaliation was the but-for cause of her termination. Because Varno could not establish a genuine dispute of material fact relating to whether there was discriminatory pretext, the district court correctly granted summary judgment in favor of the defendants." (citing *Nassar*, 570 U.S. at 360)) (summary order).

Accordingly, summary judgment will be granted on the ADEA retaliation claims.

### D.  The CFEPA Claims

"A district court's decision whether to exercise [supplemental] jurisdiction [over a state law claim] after dismissing every claim over which it had original jurisdiction is purely discretionary." *Carlsbad Technology, Inc., v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009); *see* 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it had original jurisdiction[.]").

Having decided to dismiss all of Ms. Elliott's federal claims, the Court sees no reason to exercise supplemental jurisdiction over her remaining state law claims. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendant jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims."); *see, e.g., Traylor v. Hammond*, 94 F. Supp. 3d 203, 224 (D. Conn. 2015) (declining to exercise supplemental jurisdiction when "[a]ll of federal claims in the Amended Complaint ha[d] been dismissed"); *Zuro v. Town of Darien*, 432 F. Supp. 3d 118, 130 (D. Conn. 2020) ("Here, because all of the federal claims have been dismissed early in the action, I decline to exercise supplemental jurisdiction over the remaining state law claims."). Additionally, the causation standard applied in CFEPA age discrimination claims is currently an undecided area of state law that Connecticut's courts are better equipped to address. *See Wallace v. Caring Solutions, LLC*, 278 A.3d 586, 626 (Conn. App. 2022) ("The question we must decide is whether the 'because of' language in the statute requires a plaintiff to establish but-for causation, as the defendant contends, or merely that discrimination based on one or more of the enumerated statutory characteristics was a motivating factor in the decision not to hire. Although neither our Supreme Court nor this court has addressed this precise issue, a number of Superior Court and United States District Court decisions have. There is a split of authority among those courts."); *see also Kroshnyi v. U.S. Pack Courier Servs. Inc.*, 771 F.3d 93, 102 (2d Cir. 2014) ("A court may decline to exercise supplement jurisdiction, however, if, among other factors, the claim raises a novel or complex issue of State law." (internal quotation marks omitted)).

Accordingly, the Court declines to exercise jurisdiction over the CFEPA claims, and those claims will be dismissed without prejudice to refiling in state court.

## IV.    CONCLUSION

For the foregoing reasons, Avangrid's motion for summary judgment is **GRANTED in part** and **DENIED in part**.

The motion for summary judgement is granted with respect to the ADEA claims, and those claims are dismissed. The Court declines to exercise jurisdiction over the CFEPA claims, and those claims are dismissed without prejudice to refiling in state court.

The Clerk of Court is directed to enter judgment for Avangrid on the ADEA claims and close this case.

SO ORDERED at New Haven, Connecticut, this 8th day of August, 2025.

<u>/s/ Victor A. Bolden</u>
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE